UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES J. FORD, | : |
| Plaintiff, | :  NO.   3:03cv150 (MRK) |
| v. | : |
| NEW BRITAIN TRANS. CO., et al. | : |
| Defendants. | : |

# RULING

In this Court's Ruling and Order dated December 21, 2004 [doc. #78], the Court allowed *pro se* Plaintiff Charles J. Ford to amend his complaint for the fifth time, and instructed the Clerk of the Court to docket his Amended Complaint dated June 5, 2004 [doc. #79] against the remaining Defendants in this case – the New Britain Transportation Company and one of its bus drivers, David M. Lore.[1]  As stated in the Amended Complaint [doc. #79], this case concerns an alleged incident on May 11, 2000, in which Mr. Ford claims that he was injured while attempting to board a bus driven by Mr. Lore, and operated by the New Britain Transportation Company. Presently pending before this Court are Defendants' Motion to Dismiss [doc. #80], Plaintiff's Motion for Default Entry under Rule 55(a) [doc. #76], and Plaintiff's Motion for Entry of Judgment [doc. #84].  For the reasons that follow, Defendants' motion to dismiss is granted and Plaintiff's motions for default entry and default judgment are denied as moot.

---

[1] All claims against the other Defendants in this case – the City of New Britain and the New Britain Police Department – were dismissed in the Court's Ruling and Order dated December 21, 2004 [doc. #78] at 2-7.

1

### I.

On a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true." *Todd v. Exxon Corp.*, 275 F.3d 191, 197 (2d Cir. 2001). "A complaint should not be dismissed . . . 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 197-98 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Thus, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

The Second Circuit has repeatedly cautioned that because "most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). The Second Circuit has recently emphasized that because "*pro se* litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover[, i]t is enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). It is up to the district court to determine what claims a *pro se* plaintiff's complaint could raise, and in doing so, "the court's imagination should be limited only by [the plaintiff]'s factual allegations, not by the legal claims set out in his pleadings." *Id.*

### II.

Mr. Ford's factual allegations are fairly straightforward, and must be accepted as true for

2

purposes of this motion to dismiss. On May 11, 2000, around 10:00 or 11:00 a.m., Mr. Ford was at a bus stop in New Britain, Connecticut, at the intersection of Myrtle Street and Main Street, waiting to board a bus driven by Mr. Lore, and operated by the New Britain Transportation Company. *See* Am. Compl. [doc. #79] at 2. The New Britain Transportation Company provides public bus transportation in New Britain pursuant to a contract with CT Transit (a bus service owned by the Connecticut Department of Transportation). Five other passengers boarded the bus before Mr. Ford. *See id.* When Mr. Ford attempted to board the bus, Mr. Lore allegedly closed the doors of the bus on Mr. Ford's head, and subsequently dragged Mr. Ford a short distance. *See id.* Mr. Ford claims that he suffered serious injuries and damages from the Defendants' acts of "negligence and misconduct." *Id.* at 3.[2] For purposes of Defendants' motion to dismiss, the Court assumes (without deciding) that Defendants were acting under color of state law in connection with the events that give rise to this action.

### III.

The Court first turns to Mr. Ford's federal claims. Mr. Ford either cites or alludes to a litany of federal laws and constitutional provisions that he claims Defendants violated. *See* Am. Compl. [doc. #79] at 3-4 (citing, *inter alia*, the *Bivens* Doctrine; 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. § 2000a *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*; and the First, Fourth, Fifth,

---

[2] To the extent that the Amended Complaint dated June 5, 2004 [doc. #79] purports to assert claims against Defendants City of New Britain and New Britain Police Department, those claims have already been dismissed with prejudice in the Court's earlier Ruling and Order dated December 21, 2004 [doc. #78] at 7-8, and Mr. Ford will not be permitted to resurrect those claims.

Eighth, Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution). Though the facts alleged by Mr. Ford are most logically and naturally construed as a stating a state law tort claim of negligence (a claim that is addressed in Part IV, *infra*), it is apparent from the list of federal laws that Mr. Ford includes in his Amended Complaint [doc. #79] that he believes that Defendants also violated his federal civil rights in some fashion.

Rather than require a *pro se* plaintiff like Mr. Ford to plead the proper legal theory under which he may ultimately recover, this Court is tasked with interpreting Mr. Ford's factual claims and alleged injuries, and using the Court's "imagination" to conjure up any legal claims those factual allegations could conceivably support. *See Phillips*, 408 F.3d at 130. Therefore, the Court has assessed the facts pleaded by Mr. Ford in his Amended Complaint [doc. #79] to determine what, if any, federal claims he may have. Unfortunately for Mr. Ford, however, even giving him the benefit of both a generous reading of the factual allegations of his complaint and an imaginative approach to any conceivable legal theory those facts may support, the Court concludes that Mr. Ford has not stated any viable federal claim.

Focusing on the provisions cited in Mr. Ford's Amended Complaint [doc. #79], it is apparent that Mr. Ford does not have a Freedom of Information Act claim because there is no indication or even suggestion in the Amended Complaint [doc. #79] that Mr. Ford ever requested information from any federal agency and, of course, no federal agency is a party to this action. *See, e.g.*, *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999) ("The Freedom of Information Act adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies. Specifically, FOIA requires that 'each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with

published rules . . . , shall make the records promptly available to any person.' ") (quoting 5 U.S.C. § 552(a)(3)). Mr. Ford also has not stated a valid *Bivens* claim because there is no indication from the facts pleaded in the Amended Complaint [doc. #79] that federal officials were in any way involved in the alleged bus door incident, and no federal officials are named as defendants in the Amended Complaint [doc. #79]. *See, e.g.*, *Dotson v. Griesa*, 398 F.3d 156, 165-66 (2d Cir. 2005) ("In *Bivens*, the Supreme Court recognized as implicit in the rights guaranteed by the Fourth Amendment a cause of action for money damages *against federal officials*, sued in their individual capacities, who had allegedly violated those rights. *Bivens* actions have subsequently been recognized to vindicate rights protected by the Eighth Amendment and the Due Process Clause.") (emphasis added) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971); *Carlson v. Green*, 446 U.S. 14, 19-23 (1980); *Davis v. Passman*, 442 U.S. 228, 244-49 (1979)).

Mr. Ford's First Amendment claim also fails. There is no indication that Mr. Ford engaged in any protected expression, let alone that his expression was suppressed by Defendants or that the closing of the bus door while he was attempting to board the bus was in retaliation for any protected speech or conduct by Mr. Ford. *See, e.g.*, *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) ("[T]o sustain a First Amendment retaliation claim, a [plaintiff] must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.") (internal quotations and citations omitted). The Fourth Amendment also is not available to Mr. Ford since he does not claim that he was unlawfully searched or seized by Defendants – who, furthermore, are not law enforcement

officials nor alleged to have been acting at the direction of law enforcement officials. *See, e.g.*, *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) ("The Fourth Amendment, which applies to the states through the Fourteenth Amendment, prohibits unreasonable seizures. Indisputably, an arrest is a seizure.") (internal citations and quotations omitted); *N.G. v. Connecticut*, 382 F.3d 225, 230 (2d Cir. 2004) ("The Fourth Amendment prohibits unreasonable searches. . . . In the enforcement of criminal law, a search generally requires the prior issuance of a warrant, supported by probable cause to believe that identified items will be found."); *see also INS v. Delgado*, 466 U.S. 210, 215 (1984) ("The Fourth Amendment . . . is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' ") (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).

Though invoked by Mr. Ford, the Fifth Amendment's criminal law protections and prohibition on the taking of property without just compensation also do not apply to the facts alleged in the Amended Complaint [doc. #79]. *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . ; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself . . . ; nor shall private property be taken for public use, without just compensation."). Nor would the Fifth Amendment's due process provisions apply to the state – not federal – Defendants. *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (the Fifth Amendment Due Process Clause "appl[ies] to and restrict[s] only the Federal Government").

As for Mr. Ford's reference to the Eighth Amendment, the facts of this case do not remotely suggest an Eighth Amendment claim. Mr. Ford is not challenging the imposition of a

sentence or fine and is not a prisoner claiming cruel or unusual treatment at the hands of his prison guards.  *See, e.g.*, *United States v. Gamble*, 388 F.3d 74, 77 (2d Cir. 2004) (Armed Career Criminal Act "not unconstitutional as applied to a defendant with three prior burglary convictions . . . the Supreme Court has long recognized the propriety under the Eighth Amendment of subjecting recidivists to enhanced penalties"); *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) ("The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

Nor does Mr. Ford have a viable Thirteenth Amendment claim, since there is no indication in the Amended Complaint [doc. #79] that Mr. Ford was enslaved or subject to involuntary servitude by Defendants.  *See* U.S. Const. amend. XIII, § 1 ("Neither slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."). Similarly, Mr. Ford does not have a viable Fifteenth Amendment claim because there is no indication that Defendants – who are involved in bus transportation not voting – ever denied Mr. Ford the right to vote.  *See* U.S. Const. amend. XV, § 1 ("The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.").

The Court also concludes that Mr. Ford has not stated a viable federal discrimination claim under the Equal Protection Clause of the Fourteenth Amendment, Title II, the ADA, § 1981, § 1985, or § 1986.  A thorough review of the currently pending Amended Complaint [doc. #79] and the four other previously dismissed complaints filed in this case over the course of the

last two and a half years [docs. #1, #43, #54 & #72], does not reveal even a single use of the word "discrimination" by Mr. Ford – let alone a reference to Mr. Ford's membership in a protected class (such as a racial or ethnic minority, a religion, the elderly, the disabled, or the like).  Furthermore, even if the Court were to liberally construe the *mere mention* of the Thirteenth Amendment, Fourteenth Amendment, Fifteenth Amendment, § 1981, § 1985, § 1986, Title II and the ADA in his Amended Complaint [doc. #79] as suggesting his membership in some protected class (though which class, the Court cannot tell), Mr. Ford nevertheless has failed to make even the barest of allegations that Defendants closed the bus door on him because of his membership in any such protected class or that he was otherwise treated in a discriminatory fashion by Defendants.[3]

     While the Court certainly would not require Mr. Ford to plead a discrimination claim with particularity at this stage – *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-12 (2002) – at a bare minimum the Amended Complaint [doc. #79] must provide fair notice to the Defendants of the nature of the discrimination alleged.  See *Swierkiewicz*, 534 U.S. at 512 ("A complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' ") (quoting Fed. R. Civ. P. 8(a)(2);

---

[3] This case is unlike Second Circuit's recent decision in *Phillips v. Girdich*, *supra*, where the *pro se* plaintiff's complaint in that case "suffice[d] to state an Equal Protection violation" because the plaintiff at least alleged in his complaint "that he and other minorities were subject to disparate treatment because of their race." *Phillips*, 408 F.3d at 130.  See, e.g., *Johnson v. New York State Ins. Fund*, No. 04 Civ. 4681(LBS), 2005 WL 1538193, at *3 (S.D.N.Y. Jun. 29, 2005) ("Even pursuant to the wide latitude given the pleadings of *pro se* litigants, we will not infer a gender-stereotyping claim from a complaint that makes no mention of gender roles, sex stereotypes, expectations concerning the behavior of males or females, or anything of the sort.") (citing *Phillips*, 408 F.3d at 124).

*Conley*, 355 U.S. at 47). This Mr. Ford has not done, despite five attempts.[4] Absent even the slightest affirmative expression in his Amended Complaint [doc. #79] that Defendants committed some discriminatory act against him on the basis of his membership in a protected class, the Court cannot conjure up a discrimination claim against Defendants out of thin air.

In sum, on the facts pleaded by Mr. Ford in his Amended Complaint [doc. #79], the Court would be required to engage in rank speculation, not merely imagination, to manufacture a federal claim for Mr. Ford. The Court does not read *Phillips* and other Second Circuit case law to require such speculation, particularly after this Court has already given Mr. Ford five opportunities to amend his complaint and provide whatever factual allegations support his federal claims. Accordingly, the Court dismisses all of Mr. Ford's federal claims.

## IV.

The Court next turns to Mr. Ford's state law claims. As stated above, the facts alleged by Mr. Ford present a classic state law tort claim alleging negligence by Defendants in their operation of the bus. A federal court can exert subject matter jurisdiction over claims based entirely on state law in one of two ways.

First, this Court could conceivably exercise jurisdiction over Mr. Ford's state law tort

---

[4] *See, e.g., Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (A complaint provides the requisite fair notice when it "enables the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial."); *Whyte v. Contemporary Guidance Servs., Inc.*, No. 03 CV 5544(GBD), 2004 WL 1497560, at *3 (S.D.N.Y. Jul. 2, 2004) ("Fair notice is lacking when the complaint is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.' ") (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("Lacking any indication from [plaintiff]'s filings of what policy or custom he seeks to challenge under § 1983, we cannot say that the [defendant] had 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' ") (quoting *Conley*, 355 U.S. at 47).

claims if there was diversity of jurisdiction between the parties. The diversity jurisdiction statute states in relevant part that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Unfortunately for Mr. Ford, the parties in this lawsuit are all citizens of Connecticut, and thus, his state law tort claim is not between citizens of different States. Therefore, the Court cannot entertain his state law tort claim based on diversity jurisdiction.

Second, when a case presents *both* federal law claims and related state law claims, a federal district court has jurisdiction to hear the federal law claims pursuant to its federal question jurisdiction, *see* 28 U.S.C. § 1331, and it has discretion to entertain the related state law claims under its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). In this case, however, the Court has now dismissed any conceivable federal claim stemming from the nucleus of operative facts alleged in Mr. Ford's Amended Complaint [doc. #79]. *See* Part III, *supra*. Because there are no federal law claims left in this case, the Court declines to exercise supplemental jurisdiction over Mr. Ford's state law claims. *See, e.g.*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182-83 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court. . . . If the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (internal citations, quotations, and brackets omitted). Accordingly, Mr. Ford's state law tort

claim alleging negligence by Defendants must be dismissed without prejudice to Mr. Ford's right to pursue such claims in state court.

V.

For all the reasons stated above, Defendants' Motion to Dismiss [**doc. #80**] is GRANTED.  Consequently, Plaintiff's Motion for Default Entry under Rule 55(a) [**doc. #76**] and Plaintiff's Motion for Entry of Judgment [**doc. #84**] are DENIED AS MOOT.  **The Clerk is directed to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: July 25, 2005.**